# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WOODBRIDGE GROUP OF COMPANIES, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-12560 (KJC)<br><br>(Jointly Administered) |
| WOODBRIDGE GROUP OF COMPANIES, LLC; WOODBRIDGE STRUCTURED FUNDING, LLC; WOODBRIDGE MORTGAGE INVESTMENT FUND 1, LLC; WOODBRIDGE MORTGAGE INVESTMENT FUND 2, LLC; WOODBRIDGE MORTGAGE INVESTMENT FUND 3, LLC; WOODBRIDGE MORTGAGE INVESTMENT FUND 3A, LLC; WOODBRIDGE MORTGAGE INVESTMENT FUND 4, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>RICHARD R. FRITTS; SUNWEST TRUST AS CUSTODIAN FOR RICHARD R. FRITTS IRA,<br><br>Defendants. | Adversary Proceeding<br>Case No. 18-_____ (KJC) |

**COMPLAINT OBJECTING TO CLAIMS AND COUNTERCLAIMING FOR AVOIDANCE AND RECOVERY OF AVOIDABLE TRANSFERS AND FOR <u>STATUTORY AND EQUITABLE SUBORDINATION</u>**

---

[1] The last four digits of Woodbridge Group of Companies, LLC's federal tax identification number are 3603. The mailing address for Woodbridge Group of Companies, LLC is 14140 Ventura Boulevard #302, Sherman Oaks, California 91423. Due to the large number of debtors in these cases, which are being jointly administered for procedural purposes only, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of this information may be obtained on the website of the Debtors' noticing and claims agent at www.gardencitygroup.com/cases/WGC, or by contacting the undersigned counsel for the Debtors.

172031.1

The Woodbridge Group of Companies, LLC and its above-captioned co-plaintiffs, debtors and debtors in possession (collectively, "Plaintiffs"), hereby allege for their Complaint as follows:

## NATURE OF THE ACTION

1. At least since August 2012 until shortly before they sought bankruptcy protection, the Plaintiffs and their many hundreds of debtor affiliates (collectively with Plaintiffs, the "Debtors") were operated by their founder and principal, Robert Shapiro ("Shapiro"), as a Ponzi scheme. As part of this fraud, Shapiro utilized the Debtors to raise over one billion dollars from approximately 10,000 investors as either Noteholders or Unitholders (collectively, "Investors").

2. Those Investors often placed a substantial percentage of their net worth (including savings and retirement accounts) with the Debtors and now stand to lose a significant portion of their investments and to be delayed in the return of the remaining portion. The quality of the Investors' lives will likely be substantially and adversely affected by the fraud perpetrated by Shapiro.

3. Investors were often told that they were investing money to be loaned with respect to particular properties owned by third parties, that those properties were worth substantially more than the loans against the properties, and that they would have the benefit of a stream of payments from these third parties for high-interest loans, protected by security interests and/or mortgages against such properties. In reality, these statements were lies. Investors' money was almost never used to make high-interest loans to unrelated, third-party borrowers, there was no stream of payments, Investors' money was commingled and used for an assortment of expenses, including maintaining a lavish lifestyle for Shapiro and his family, brokers' commissions, overhead (largely for selling even more notes and units to investors), and payment

of principal and interest to existing investors. The money that was used to acquire property (almost always owned by a disguised affiliate) cannot be traced to any specific Investor. These are typical characteristics of Ponzi schemes.

4. Because the Debtors operated as a Ponzi scheme, obtaining new money from Investors into the Ponzi scheme conferred no net benefit on the Debtors; on the contrary, each new investment was a net negative. Money was siphoned off to pay the expenses described above, so that the Debtors actually received only a fraction of the investment dollars. New money also perpetuated the Ponzi scheme, enabling the Debtors to return fictitious profits to early Investors; in the absence of new investment, the house of cards would fall (as it eventually did). At the same time, each investment created an obligation to return to the defrauded Investor 100% of the investment, such that each new investment increased the Debtors' liabilities and ultimately left them unable to satisfy their aggregate liabilities.

5. The purpose of this lawsuit is (i) to object to the Claims (defined below) so that Claimant (defined below) is not further compensated at the expense of legitimate creditors for activities that advanced the Ponzi scheme and further drove the Debtors into insolvency, (ii) to recover monies previously paid to Claimant by reason of these activities or as fictitious profits on Claimant's Note/Unit Claims (as defined below), and (iii) to the extent the Claims, or any new or amended claims, survive, to subordinate them pursuant to Bankruptcy Code (as defined below) section 510(b) and/or 510(c).

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action under 28 U.S.C. §§ 157(a) and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This adversary proceeding is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (C), (F), and (H). In any event, Plaintiffs consent to entry of final orders or judgment by the bankruptcy court. Venue of this adversary proceeding is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

7. On December 4, 2017 (the "Petition Date"), Plaintiffs commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Other of the Debtors also filed voluntary chapter 11 cases either on the Petition Date or within the following four months (collectively with Plaintiffs' cases, the "Bankruptcy Cases").

8. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in these cases.

9. These cases are being jointly administered for procedural purposes pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

10. Richard R. Fritts and Sunwest Trust as Custodian for Richard R. Fritts IRA (together, "Claimant") have filed the following claims (collectively, the "Claims") in one or more of the Bankruptcy Cases:

> a. Richard R. Fritts filed Claim No. 7778 (the "Commission Claim") for $13,145.83. Claimant asserts that the Commission Claim is entitled to priority under Bankruptcy Code section 507(a)(4) up to the statutory limit of $12,850.00.

172031.1                                  3

      b.  Richard R. Fritts filed Claim Nos. 9339, 9340, 9341, 9342, 9343, and 9344 (collectively, the "Indemnity Claims") in the amount of "unknown." The stated basis for the Indemnity Claims is: "Indemnity Claim[s] and/or Contingent Claim(s) relating to third party lawsuits brought against claimant."

      c.  Sunwest Trust as Custodian for Richard R. Fritts IRA filed Claim Nos. 5832, 5833, 5837, 9319 (which amends Claim No. 5832), 9328 (which amends Claim No. 5833), and 9331 (which amends Claim No. 5837) (collectively, the "Note/Unit Claims"). Claimant asserts that each of the Note/Unit Claims is a fully secured claim.

11. Plaintiffs are informed and believe that Claimant seeks recovery on the Commission Claim based upon Claimant's activities that generated investments in the Debtors. In particular, Richard R. Fritts was an external broker (*i.e.*, not an employee of the Debtors) who marketed Notes and/or Units to potential Investors.

12. Plaintiffs are informed and believe and thereupon allege that within the 90 days preceding the Petition Date, Claimant received transfers totaling not less than $150,002.08, or more according to proof (the "90 Day Transfers"), including prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Note/Unit Claims. The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 1.

13. Plaintiffs are informed and believe and thereupon allege that within the two years preceding the Petition Date, Claimant received transfers totaling not less than $658,423.75, or more according to proof (the "Two Year Transfers"), including prepetition distributions of

fictitious profits from the Ponzi scheme in respect of the Note/Unit Claims. The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 2. The Two Year Transfers are inclusive of the 90 Day Transfers, but Plaintiffs do not seek to recover the same sum more than once.

14. Plaintiffs are informed and believe and thereupon allege that within the four years preceding the Petition Date, Claimant received transfers totaling not less than $971,502.51, or more according to proof (the "Four Year Day Transfers"), including prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Note/Unit Claims. The precise transfers – including the transferor, its petition date, the date of each transfer, and the amount of each transfer – are set forth on Exhibit 3. The Four Year Transfers are inclusive of the Two Year Transfers and the 90 Day Transfers, but Plaintiffs do not seek to recover the same sum more than once.

## FIRST CLAIM FOR RELIEF

### Objection to Claims

15. Plaintiffs reallege and incorporate herein Paragraphs 1 through 14, as if fully set forth herein.

16. Plaintiffs' obligation to honor and/or satisfy the Claims is unenforceable and/or avoidable for multiple reasons, as set forth below in paragraphs 17 through 21, including subparts thereof. Any of the reasons set forth in said paragraphs, including subparts thereof, is individually a basis for disallowance of the Claims.

17. Without shifting the burdens of proof or persuasion, which remain on Claimant, Plaintiffs are informed and believe and thereupon allege that their obligation, if any, to honor and satisfy the Commission Claim is unenforceable, in whole or in part, under applicable

nonbankruptcy law (other than because the Commission Claim is contingent or unmatured); thus, the Commission Claim is not allowable under Bankruptcy Code section 502(b)(1). The nonbankruptcy law deficiencies include, without limitation, the following:

    a. There was no agreement for paying commissions; and/or

    b. Claimant was not properly licensed to sell securities; and/or

    c. Any payment of commissions would constitute unjust enrichment; and/or

    d. Any obligation to compensate Claimant for activities that perpetuated a fraud is contrary to public policy; and/or

    e. Recovery is barred by the doctrines of in pari delicto and/or unclean hands.

18. Without shifting the burdens of proof or persuasion, which remain on Claimant, Plaintiffs are informed and believe and thereupon allege that their obligation, if any, to honor and satisfy the Indemnity Claims is unenforceable, in whole or in part, under applicable nonbankruptcy law (other than because the Indemnity Claims are contingent or unmatured); thus, the Indemnity Claims are not allowable under Bankruptcy Code section 502(b)(1). The nonbankruptcy law deficiencies include, without limitation, the following:

    a. There was no agreement for paying defense, indemnity, reimbursement and/or contribution and no applicable nonbankruptcy law obligates the Plaintiffs to satisfy such claims; and/or

    b. Providing Claimant defense, indemnity, reimbursement and/or contribution is contrary to public policy; and/or

    c. Claimant was not properly licensed to sell securities and is, therefore, ineligible to obtain defense, indemnity, reimbursement and/or contribution as a matter of applicable nonbankruptcy law; and/or

    d. Recovery is barred by the doctrines of in pari delicto and/or unclean hands; and/or

    e. The Indemnity Claims are duplicative of one another, and Claimant is entitled to, at most, one recovery on account of the Indemnity Claims.

19. Plaintiffs' obligations, if any, to honor and satisfy the Commission Claim and the Indemnity Claims were incurred in a manner which is avoidable under Bankruptcy Code section 548 because:

    a. The obligations were incurred by the Plaintiffs with actual intent to hinder or delay or defraud their creditors insofar as the services to be provided in exchange for such obligations would perpetuate a Ponzi scheme; and/or

    b. The obligations were incurred by the Plaintiffs for less than reasonably equivalent value at a time when the Plaintiffs were insolvent; and/or

    c. The obligations were incurred by the Plaintiffs for less than reasonably equivalent value at a time when the Plaintiffs were engaged or about to engage in business or a transaction for which any capital remaining with the Plaintiffs was an unreasonably small capital; and/or

    d. The obligations were incurred by the Plaintiffs for less than reasonably equivalent value at a time when the Plaintiffs intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured.

20. The Commission Claim and the Indemnity Claims are, therefore, premised entirely on avoidable obligations under Bankruptcy Code section 548(a) and not allowable.

21. The Claims are further not allowable because:

  a. Claimant has received property, including one or more of the 90 Day Transfers, the Two Year Transfers or the Four Year Transfers, recoverable under Bankruptcy Code section 550; and/or

  b. Claimant has received a transfer, including one or more of the 90 Day Transfers, the Two Year Transfers or the Four Year Transfers, avoidable under Bankruptcy Code section 544 or section 547 or section 548.

In either event, the Claims must be disallowed under Bankruptcy Code section 502(d).

## SECOND CLAIM FOR RELIEF

**Avoidance and Recovery of Preferential Transfers**

22. Plaintiffs reallege and incorporate herein Paragraphs 1 through 12, as if fully set forth herein.

23. The 90 Day Transfers constituted transfers of the Plaintiffs' property.

24. The 90 Day Transfers were made to or for the benefit of Claimant on account of an antecedent debt and while the Plaintiffs were insolvent. The affirmative assertion that the Plaintiffs were insolvent at the times of the 90 Day Transfers is not intended and does not shift the burden of proof or alter the presumption of insolvency provided by Bankruptcy Code section 547(f).

25. By virtue of the 90 Day Transfers, Claimant received more than Claimant would have received if the 90 Day Transfers had not been made and Claimant received a distribution pursuant to a chapter 7 liquidation.

26. As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 547(b), 550(a), and 551: (a) avoiding the 90 Day Transfers free and clear of any interest of Claimant, (b) directing that the 90 Day Transfers be set aside, and (c) recovering the 90 Day Transfers or the value thereof from Claimant for the benefit of the estates of the Plaintiffs.

### THIRD CLAIM FOR RELIEF

**Avoidance and Recovery of Actual Intent Fraudulent Transfers – Bankruptcy Code**

27. Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set forth herein.

28. The Two Year Transfers constituted transfers of the Plaintiffs' property.

29. The Two Year Transfers were made by the Plaintiffs with actual intent to hinder or delay or defraud their creditors insofar as either (i) the services to be provided in exchange for such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Note/Unit Claims.

30. The Two Year Transfers were made to or for the benefit of Claimant.

31. As a result of the foregoing, the Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Claimant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Claimant for the benefit of the estate of the Plaintiffs.

## FOURTH CLAIM FOR RELIEF

**Avoidance and Recovery of Constructive Fraudulent Transfers – Bankruptcy Code**

32. Plaintiffs reallege and incorporate herein Paragraphs 1 through 13, as if fully set forth herein.

33. The Two Year Transfers constituted transfers of the Plaintiffs' property.

34. The Two Year Transfers were made by the Plaintiffs for less than reasonably equivalent value at a time when the Plaintiffs (i) were insolvent; and/or (ii) were engaged or about to engage in business or a transaction for which any capital remaining with the Plaintiffs were an unreasonably small capital; and/or (iii) intended to incur, or believed that Plaintiffs would incur, debts beyond their ability to pay as such debts matured.

35. The Two Year Transfers were made to or for the benefit of Claimant.

36. As a result of the foregoing, the Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 548(a), 550(a), and 551: (a) avoiding the Two Year Transfers free and clear of any claimed interest of Claimant, (b) directing that the Two Year Transfers be set aside, and (c) recovering such Two Year Transfers or the value thereof from Claimant for the benefit of the estate of the Plaintiffs.

## FIFTH CLAIM FOR RELIEF

**Avoidance and Recovery of Actual Intent Voidable Transactions – State Law**

37. Plaintiffs reallege and incorporate herein Paragraphs 1 through 14, as if fully set forth herein.

38. The Four Year Transfers constituted transfers of the Plaintiffs' property.

39. The Four Year Transfers were made by the Plaintiffs with actual intent to hinder or delay or defraud their creditors insofar as either (i) the services to be provided in exchange for

such transfers would perpetuate a Ponzi scheme, or (ii) such transfers were prepetition distributions of fictitious profits from the Ponzi scheme in respect of the Note/Unit Claims.

40. The Four Year Transfers were made to or for the benefit of Claimant.

41. Plaintiffs that made one or more of the Four Year Transfers have at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

42. The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(1) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by the Plaintiffs pursuant to Bankruptcy Code section 544(b).

43. As a result of the foregoing, the Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Claimant, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Claimant for the benefit of the estate of the Plaintiffs.

## SIXTH CLAIM FOR RELIEF

**Avoidance and Recovery of Constructive Voidable Transactions – State Law**

44. Plaintiffs reallege and incorporate herein Paragraphs 1 through 14, as if fully set forth herein.

45. The Four Year Transfers constituted transfers of the Plaintiffs' property.

46. The Four Year Transfers were made by the Plaintiffs for less than reasonably equivalent value at a time when the Plaintiffs (i) were insolvent; and/or (ii) were engaged or were

about to engage in business or a transaction for which any capital remaining with the Plaintiffs were an unreasonably small capital; and/or (iii) intended to incur, or believed that they would incur, debts beyond their ability to pay as such debts matured.

47. The Four Year Transfers were made to or for the benefit of Claimant.

48. At the times of, and/or subsequent to, each of the Four Year Transfers, each Plaintiffs that made one or more of the Four Year Transfers has at least one creditor with an allowable unsecured claim for liabilities, which claim remained unsatisfied as of the Petition Date.

49. The Four Year Transfers are avoidable under applicable law – California Civil Code section 3439.04(a)(2) and/or comparable provisions of law in other jurisdictions that have adopted the Uniform Voidable Transactions Act, the Uniform Fraudulent Transfer Act or the Uniform Fraudulent Conveyance Act – by a creditor holding an allowed unsecured claim and thus by the Plaintiffs pursuant to Bankruptcy Code section 544(b).

50. As a result of the foregoing, the Plaintiffs are entitled to judgment pursuant to Bankruptcy Code sections 544(b), 550(a), and 551: (a) avoiding the Four Year Transfers free and clear of any claimed interest of Claimant, (b) directing that the Four Year Transfers be set aside, and (c) recovering such Four Year Transfers or the value thereof from Claimant for the benefit of the estate of the Plaintiffs.

### SEVENTH CLAIM FOR RELIEF

**Statutory Subordination of Indemnity Claims**

51. Plaintiffs reallege and incorporate herein Paragraphs 1 through 11, as if fully set forth herein.

52. The Indemnity Claims, to the extent allowable under applicable nonbankruptcy law, are for reimbursement or contribution on account of (a) claims by a non-party or non-parties to this adversary proceeding who purchased notes and/or units sold by one or more of the Debtors and who is or are seeking recovery of or damages arising from the purchase of a security (i.e., notes and/or units) of one or more of the Debtors.

53. Subordination of the Indemnity Claims to all claims and interests of the non-party or non-parties referenced in paragraph 52 and to all other non-party claimants whose claims are accorded the same priority and classification is required by Bankruptcy Code section 510(b).

54. As a result of the foregoing, Plaintiffs are entitled to judgment pursuant to Bankruptcy Code section 510(b) subordinating any and all claims for defense, indemnity, reimbursement and/or contribution that Claimant may assert against any of the Debtors to all claims and interests of the non-party or non-parties referenced in paragraph 52 and to all other non-party claimants whose claims are accorded the same priority and classification.

## EIGHTH CLAIM FOR RELIEF

### Equitable Subordination of Claims

55. The Plaintiffs reallege and incorporate herein Paragraphs 1 through 11, as if fully set forth herein.

56. By providing services that helped perpetuate a Ponzi scheme, Claimant engaged in inequitable conduct.

57. Claimant's inequitable conduct has resulted in injury to the Debtors' estates and their other creditors and/or has conferred an unfair advantage on Claimant.

58. Principles of equitable subordination require that any claims asserted by Claimant be equitably subordinated to all other claims against the Debtors.

59. Equitable subordination as requested herein is consistent with the provisions and purposes of the Bankruptcy Code.

60. As a result of the foregoing, the Plaintiffs are entitled to judgment pursuant to Bankruptcy Code section 510(c) equitably subordinating any and all claims that Claimant may assert against any of the Debtors, whatever the origin of those claims, including, without limitation, the Note/Unit Claims and any claims that may be asserted under Bankruptcy Code section 502(h), to all other claims against the Debtors.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiffs request that the Court enter judgment:

**(1)** On the first claim for relief, sustaining the objection to the Claims, decreeing that Claimant take nothing thereon, and directing the Claims Agent to strike Claim Nos. 5832, 5833, 5837, 7778, 9319, 9328, 9331, 9339, 9340, 9341, 9342, 9343, and 9344 from the official Claims Register;

**(2)** On the second claim for relief, (a) avoiding the 90 Day Transfers free and clear of any interest of Claimant, (b) directing that the 90 Day Transfers be set aside, and (c) ordering Claimant to pay to the Plaintiffs $150,002.08;

**(3)** On the third and fourth claims for relief, (a) avoiding the Two Year Transfers free and clear of any claimed interest of Claimant, (b) directing that the Two Year Transfers be set aside, and (c) ordering Claimant to pay to the Plaintiffs $658,423.75;

**(4)** On the fifth and sixth claims for relief, (a) avoiding the Four Year Transfers free and clear of any claimed interest of Claimant, (b) directing that the Four Year Transfers be set aside, and (c) ordering Claimant to pay to the Plaintiffs $971,502.51;

**(5)** On the seventh claim for relief, subordinating the Indemnity Claims, to the extent that they seek defense, indemnity, reimbursement and/or contribution, to all claims of all persons who have allowed claims for the recovery of or damages arising from the purchase of a security (including notes and/or units) of one or more of the Debtors and to all other non-party claimants whose claims are accorded the same priority and classification

**(6)** On the eighth claim for relief, equitably subordinating any and all claims that Claimant may assert against any of the Debtors, whatever the origin of those claims, including, without limitation, the Note/Unit Claims and any claims that may be asserted under Bankruptcy Code section 502(h), to all other claims against the Debtors; and

**(7)** On all claims for relief, awarding the Plaintiffs prejudgment interest as permitted by law, costs of suit, and such other and further relief as is just and proper.

Dated:  September 17, 2018
       Wilmington, Delaware

*/s/ Michael S. Neiburg*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Sean M. Beach (No. 4070)
Edmon L. Morton (No. 3856)
Michael S. Neiburg (No. 5275)
Ian J. Bambrick (No. 5455)
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
Tel:   (302) 571-6600
Fax:   (302) 571-1253

-and-

KLEE, TUCHIN, BOGDANOFF & STERN LLP
Kenneth N. Klee (*pro hac vice*)
Michael L. Tuchin (*pro hac vice*)
David A. Fidler (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
1999 Avenue of the Stars, 39th Floor
Los Angeles, California 90067

*Counsel to the Debtors and Debtors in Possession*